UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER CAIN,

       Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No. 12-15582
　　　　　　　　　　　　　　　　　　　　HON. TERRENCE G. BERG
　　　　　　　　　　　　　　　　　　　　HON. MONA K. MAJZOUB

CITY OF DETROIT, a municipal
corporation, and BRANDON SHORTRIDGE,
Sgt. MICHAEL JACKSON,
JEFFREY ELGERT, ADAM VERBEKE,
in their individual and official capacities,
Jointly and Severally,

       Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 47)

     Plaintiff in this case is the driver of a vehicle that was stopped, searched and impounded by the Detroit Police on February 1, 2012.  Plaintiff claims that in the course of this stop and search Defendants, three individual police officers, their supervisor and the City of Detroit, violated his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights, and that Defendants are liable under Title 42 U.S.C. § 1983, which permits federal lawsuits for violations of constitutional rights.  After conducting discovery, Defendants filed a Motion for Summary Judgment on all claims, asserting qualified immunity, and Plaintiff filed a Response (Dkts. 47, 49).  The Court heard oral argument on Defendants' motion on October 11, 2016 in Flint, Michigan.

1

For the reasons set forth below, Defendants' motion is **GRANTED** with respect to Plaintiff's municipal liability, supervisor liability, and Fifth, Sixth and Fourteenth Amendment claims and **DENIED** with respect to Plaintiff's First and Fourth Amendment claims.

## I.   Background

The general outline of what happened on February 1, 2012 is not disputed. At approximately 8:30 p.m., Defendant Officers Brandon Shortridge, Jeffrey Elgert and Adam Verbeke ("the Officers") were working in the area of E. Seven Mile Road and Hull Street in Detroit, Michigan. They were assigned to "Special Operations," a patrol focused on "major crime involvement." (Dkt. 49, Ex. 3 at 7). The Officers initiated a traffic stop of Plaintiff Christopher Cain, a veteran with a physical disability that impedes his walking. They directed Plaintiff to exit his vehicle, patted him down (the parties dispute the degree of force used here), issued him a ticket for failing to possess a driver's license and drove his vehicle to the police station before impounding it. After the incident, Plaintiff called the Officers' supervisor, Sergeant Michael Jackson, to relay what occurred and ask how to recover his car.

The parties' accounts differ regarding the details of what happened during the incident and its aftermath. Officer Shortridge testifies that the Officers pulled Plaintiff over because he was speeding. (Dkt. 49, Ex. 1 at 6). Defendants state in their brief that upon approaching Plaintiff's vehicle, they observed him reach

2

between the door and the seat, in a manner consistent with attempting to conceal a weapon. (Dkt. 47 at 4).[1] The brief further states, with no citation to the record, that Officer Shortridge then asked Plaintiff to exit his car, patted him down for weapons, and issued him a ticket and impounded his vehicle because he was unable to produce his driver's license. (*Id.*). In their deposition testimony, the Officers do not recall any details of the incident except that Plaintiff was issued a citation and his vehicle was impounded. (Dkt. 49, Ex. 1 at 7; Ex.2 at 5; Ex.3 at 7).

According to Plaintiff's testimony, he recalled exactly what happened. Plaintiff denies that he was speeding and states that the Officers were in no position to have made this determination because they drove toward his vehicle from a side street at a high rate of speed. (Dkt. 49, Ex. 5). Plaintiff specifically denies that he made any type of reaching movement as the Officers walked toward his vehicle. (*Id.*) He notes too that they could not have seen inside his car because it has heavily tinted windows. (*Id.*). Plaintiff adds that when the Officers surrounded his car, they were in black tactical gear without badges and Officer Verbeke had his gun drawn. (Dkt. 49, Ex. 4 at 17-19).[2]

According to Plaintiff, Officers Elgert and Shortridge pulled him out of his car, without explanation, and placed him in a "subdue position," injuring his arm and wrist. (Dkt. 49 at 16-17). Specifically, Plaintiff testifies that Officer Elgert "took

---

[1] At their depositions, none of the Officers testified to having seen Plaintiff make any such movement. (Dkt. 49, Exs. 1-3). To support this allegation, Defendants point to a police activity log bearing the Defendant Officers' signatures which contains a written notation that Plaintiff made such a movement. (Dkt. 47, Ex. A at 7).
[2] Officer Verbeke testifies that the Officers were likely in black tactical gear, though notes their shirts would have read "police." (Dkt. 49, Ex. 3 at 4).

3

my right hand, put it up behind my back and basically spreaded [*sic*] my legs" on the "hood" of the police car. (Dkt. 49, Ex. 4 at 6-7). Officer Elgert then searched Plaintiff, taking his wallet from his pants' pocket, while Officers Verbeke and Shortridge searched his entire vehicle and strew his property, including his cane, on the ground outside. (*Id.* at 17). When Plaintiff questioned the Officers' right to take these actions, he said that Officer Shortridge replied, *inter alia*, "Detroit is a dangerous city. We don't need a damned search warrant." (*Id.*). Plaintiff states that the Officers then demanded his license and registration and he responded that they were probably in the car but the Officers refused to let him look for them. (*Id.*). Instead, against the backdrop of Plaintiff's continued protestations and demands for the Officers' information, Officer Verbeke drove Plaintiff's car away and Officer Shortridge stated (presumably to Officer Elgert), "Fuck it. Do you want to take him to jail?" (*Id.* at 18). Plaintiff then stated, *inter alia*, "I don't understand why you guys can do this? You don't know the damn law? I don't see a badge, I don't see anything, you didn't give me your name," to which he stated that Officer Shortridge replied, "fine I'll give you a ticket for no identification." The Officers then drove away, leaving Plaintiff stranded. (*Id.* at 18-19).

After Defendant Officers Elgert and Shortridge drove away, Plaintiff testifies, he called Sergeant Jackson to explain what happened, request a ride home and inquire about retrieving his car. Plaintiff states that Sgt. Jackson told him the police could not transport him, that he did not know where Plaintiff's car was and

4

that he should call back. (*Id.* at 19).³ Finally, Plaintiff testifies that his knee popped out on his walk home that night, he had to pay $150 to get his car back, the ticket he received was eventually dismissed and his license was actually inside the vehicle when he retrieved it from the tow lot. (*Id.* at 20).

## II. The Summary Judgment Standard in Qualified Immunity Cases

To succeed on summary judgment the movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). According to the doctrine of qualified immunity, however, government officials are shielded "from standing trial for civil liability in their performance of discretionary functions unless their actions violate clearly established rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, at the summary judgment stage of a § 1983 action against police officers, even where the officers are the movants, plaintiff has the burden to show that (1) the officers violated a constitutional right and (2) that right was clearly established. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)). Stated differently, plaintiff must first make out a prima facie case for a violation of a constitutional right and second, must establish that the law was so clear at the time of the incident that a reasonable officer in such a scenario would have known she was violating it. *Smith v. City of Wyoming*, 821 F.3d 697, 708-09 (6th Cir. 2016).

---

³ Plaintiff adds that later that evening the phone operator at the precinct refused to put his call through to Jackson because he had already spoken with him, and that only after Plaintiff's brother called the precinct and asked to speak to Jackson was he able to talk to him and learn where his car was. (*Id.*).

Although plaintiff carries the burden of production where defendant asserts qualified immunity, on summary judgment the Court must still view the evidence, and draw all reasonable inferences, in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[a] party may object that the material cited to support … a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), and "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id.* advisory committee's note to 2010 amendment.

If the district court determines plaintiff's evidence creates a genuine issue of fact—*i.e.* is evidence on which a jury could reasonably find for plaintiff—it must deny Defendant summary judgment. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015); *see also Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) ("[w]here…the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."). The Sixth Circuit has "explicitly found that a plaintiff's testimony is itself sufficient to create a genuine issue of material fact." *Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015).

III. **Discussion**

    A. **Plaintiff's Municipal Liability, Fifth, Sixth and Fourteenth Amendment Claims**

As an initial matter, the Court will enter summary judgment in favor of Defendants where Plaintiff's claims are voluntarily conceded, admitted to have been

6

unintentionally brought or found to be redundant of other claims. At oral argument, Plaintiff's counsel conceded that Plaintiff's municipal liability claim was unfounded.[4] Plaintiff also admitted that his inclusion of claims under the Fifth and Sixth Amendment in the Amended Complaint was in error; he did not intend to make such claims. (Dkt. 26). In addition, Plaintiff's counsel stated that the Amended Complaint invoked the Fourteenth Amendment only for purposes of the incorporation doctrine. Because Congress intended § 1983 to provide statutory authority to enforce the Fourteenth Amendment, it is "redundant" to raise a Fourteenth Amendment claim solely for incorporation purposes in a § 1983 claim. *Terrace Knolls, Inc.* v. *Dalton, Dalton, Little & Newport, Inc.*, 571 F. Supp. 1086, 1090 (N.D. Ohio 1983), aff'd, 751 F.2d 387 (6th Cir. 1984) (citing *Monroe v. Pape*, 365 U.S. 167, 171, (1961)). For these reasons, with regard to Plaintiff's municipal liability, Fifth, Sixth and Fourteenth Amendment claims, Defendants' motion for summary judgment will be granted.

### B. Plaintiff's Fourth Amendment Claims

The Fourth Amendment protects citizens against unreasonable searches and seizures and, in the context of an arrest or investigatory stop, against excessive force. *Aldini v. Johnson, 609 F.3d 858, 864* (6th Cir. 2010). Plaintiff alleges that his rights under the Fourth Amendment were violated by the Defendants due to their having committed an illegal stop, search, and seizure and using excessive force.

---

[4] Plaintiff's counsel conceded Plaintiff's municipal liability claim because Plaintiff acknowledged that he could not point to a municipal policy pursuant to which the Officers were acting, as required under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).

The Officers, asserting qualified immunity, argue for summary judgment on each of these claims.

    1.    *The Stop of Plaintiff's Vehicle*

It is well established under the Fourth Amendment that a police officer requires probable cause that a civil traffic violation has occurred before she may lawfully stop a car. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). Defendant Officer Shortridge testifies that the Officers stopped Plaintiff because he was speeding (in their deposition testimony, Officers Elgert and Verbeke could not recall the reason that they stopped Plaintiff). Plaintiff testifies that he was not speeding (and that the Officers were not in a position to have made this determination) nor committing any other civil traffic infraction when the Officers stopped him. Plaintiff's testimony thus makes out a prima facie case that he was not committing any infraction at the time he was stopped, while the Defendant Officers' testimony is inconsistent on the reason for the stop. There is no question that a reasonable officer would have known that stopping a citizen's vehicle without probable cause that a civil traffic violation has occurred, or reasonable suspicion that some other crime was being committed, would be a violation of the Fourth Amendment right to be free from unreasonable seizures.

Whether the Officers are entitled to qualified immunity thus depends on which version of the facts is believed. Here, based on the state of the record, a reasonable jury could find in favor of Plaintiff. Consequently, there is a genuine

issue of material fact as to whether the stop was made without probable cause. Defendants therefore are not entitled to summary judgment on this claim.

    2.    *The Searches of Plaintiff's Person and Vehicle*

It well established under the Fourth Amendment that (1) officers may "perform a 'patdown' of a driver and any passengers [only] upon reasonable suspicion that they may be armed and dangerous." *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014) (quoting *Knowles v. Iowa*, 525 U.S. at 113, 119 (1998)), and (2) an officer may, pursuant to the automobile exception to the Fourth Amendment's warrant requirement, perform a warrantless search of a vehicle only where they "have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012).

To justify what Defendants characterize as Defendant Officer Shortridge's patdown of Cain, Defendants proffer a police activity log which records that upon the Officers' approach, Plaintiff reached between the door and the seat, as if to conceal a weapon. At their depositions, although they had reviewed the activity log, none of the Officers could recall seeing Plaintiff making such a furtive movement. Plaintiff points out that the activity log is an out-court-statement being offered for the truth of the matter asserted.  It is thus subject to a hearsay objection (Dkt. 49 at 25). At oral argument, Defendants' counsel stated that Defendants would seek to admit the activity log at trial, pursuant to Federal Rule of Evidence 803(5), only to

try and refresh the Officers' recollections, not as independent evidence.[5] Even assuming the Court did admit the activity log under 803(5) at trial, given Plaintiff's directly contradictory testimony (discussed below), the prospect of the Officers potentially testifying to renewed memories of Plaintiff's alleged furtive movement does not support a finding on summary judgment that no genuine issue of material fact exists on the question of whether Plaintiff made such a movement. On the question of whether Officers Elgert and Verbeke searched Plaintiff's vehicle, Defendants are silent.

Plaintiff testified that he made no reaching movement upon the Officers' approach and that his car had heavily tinted windows, so that it would have been difficult for the Officers to have seen what he was doing inside. Plaintiff further testified that, upon pulling him out of his vehicle, Officer Shortridge searched his person with no justification, while Officers Elgert and Verbeke conducted a full search of his car. The facts set out in Plaintiff's testimony make out a prima facie case that the searches of Plaintiff's person and vehicle were conducted without probable cause. In addition, at the time of the incident, given the state of Constitutional law, a reasonable officer would have known that it would be a

---

[5] Rule 803 states "the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803. Subsection 5 reads:
  "(5) Recorded Recollection. A record that:
    (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
    (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
    (C) accurately reflects the witness's knowledge.
  If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."

violation of a person's Fourth Amendment right to be free from unreasonable searches to conduct a pat-down or vehicle search without either reasonable suspicion—for the frisk—or probable cause—for the vehicle search. The question of whether the Officers may be entitled to qualified immunity turns on whether one accepts Plaintiff's or the Officers' version of the facts. Based on the evidence currently before the Court, a genuine issue of fact has been presented as to whether the searches occurred without sufficient cause. For these reasons, Defendants' motion for summary judgment will be denied as to Plaintiff's claims for illegal search of his person and vehicle.

3. *The Impoundment of Plaintiff's Vehicle*

It is well established under the Fourth Amendment that vehicular impoundments "must be objectively justifiable." *United States v. Hockenberry*, 730 F.3d 645, 658 (2013) (quoting *United States v. Kimes*, 246 F.3d 800, 805) (6th Cir. 2001). Officers have discretion to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* (quoting *United States v. Jackson*, 682, F.3d 448, 453 (6th Cir. 2012)).

Defendants testify that they impounded Plaintiff's vehicle because he did not possess a driver's license. They point to no policy or other standard criteria stating

11

that this was within their discretion.[6] Plaintiff testifies that he told the Officers he believed his license was in the glove compartment but that they refused to let him look for it and that upon retrieving his vehicle from the tow lot his license was in the glove compartment.[7]

Plaintiff's testimony makes out a prima facie case for illegal seizure. The record before the Court shows that the Officers impounded Plaintiff's vehicle on the ground that he did not have a driver's license, but Plaintiff's testimony is that the Officers refused to allow Plaintiff to retrieve his license, which, Plaintiff testifies, was in the vehicle and could have been produced. In addition, at the time of the incident, given that Plaintiff was under the Officers' control and presented no threat, a reasonable officer would have known that impounding Plaintiff's vehicle for failure to possess a license without allowing him the opportunity to retrieve his license was not a reasonable seizure based on probable cause as required by the Fourth Amendment.

The qualified immunity analysis thus rests on whether one takes as true Plaintiff's or the Officers' recounting of the incident. This record raises a genuine issue of fact as to whether the Officers prevented Plaintiff from showing that he was in possession of his license and a jury would be well within the bounds of reason in

---

[6] Defendants cite broadly to a document entitled "Detroit Police Department Directive Search and Seizure." This document has a section about vehicle searches that states that vehicles towed or impounded will be subjected to an inventory search, but it contains no policy or standard criteria indicating when it is appropriate or required to impound a vehicle. (Dkt. 47, Ex. 5 at 7).

[7] At oral argument, Defendants stated that they would file a record of the inventory search of Plaintiff's vehicle that the Detroit Police Department requires the impounding officer to make. (Dkt. 47, Ex. 5 at 8). As of this date of this Order, Defendants have not filed any record of the inventory search.

concluding that it was not objectively justifiable for the Officers to impound Plaintiff's car for failure to possess a license where Plaintiff actually did possess a license, but the Officers prevented him from retrieving it. For these reasons, Defendants' motion for summary judgment will be denied as to Plaintiff's claim that the impoundment constituted an illegal seizure.

4.      *The Alleged Use of Excessive Force*

The "doctrinal framework of excessive force claims is well settled.'" *City of Wyoming*, 821 F.3d at 717. Whether an officer has exerted excessive force during the course of a seizure is determined under an objective reasonableness standard. *Getz v. Swoap*, No. 15-3514, 2016 WL 4363152, at *4 (6th Cir. Aug. 16, 2016). In assessing objective reasonableness, three factors are of particular relevance: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (citing *Graham v. Connor*, 490 U.S 386, 396 (1989)).

As discussed above, Officer Shortridge testifies that Plaintiff was speeding. In addition, Defendants allege that Plaintiff made a reaching movement, as if trying to conceal a weapon, upon the Officers' approach. The only proof for the furtive movement, however, is the hearsay activity log which, at most, the Court would allow Defendants' counsel to use at trial for the purpose of attempting to refresh the Officers' recollections of this movement. Defendants do not allege that Plaintiff attempted to evade or resist arrest.

Plaintiff testifies that he was not speeding, nor committing any crime, and that the Officers, without justification, pulled him from his vehicle at gun point and placed him in a subdue position, causing injury to his arm and wrist. Plaintiff further testifies that he was compliant throughout the incident. The question is whether the degree of force was objectively reasonable under the surrounding circumstances. Considering the three elements, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *Darrah*, 255 F.3d at 307, most of these factors suggest that a high degree of force would not be objectively reasonable. The crime was not severe: a traffic stop for speeding. Whether the suspect posed a threat is disputed: only the activity log—which the Court may or may not admit at trial, and if it is admitted may or may not successfully refresh the Officers' recollections—suggests Plaintiff made a furtive movement. The Officers are unable to recall, in their testimony, that they saw Plaintiff reaching for anything. There is no proof in support of the third factor because the parties agree that Plaintiff did not resist or evade arrest. Plaintiff thus succeeds in making out a prima facie case that the degree of force used was excessive. In addition, in the absence of evidence that Plaintiff presented a threat, a reasonable officer would have known that forcibly extracting Plaintiff from his vehicle and physically subduing him with sufficient force to cause injury would violate his Fourth Amendment right to be free from excessive force. The question of whether the Officers are entitled to qualified immunity is thus a question for the

14

jury because the answer depends on whether one believes the Plaintiff's or the Officers' version of the facts. And, under these circumstances, a reasonable jury could find in favor of Plaintiff. For these reasons, Defendants' motion for summary judgment as to Plaintiff's claim for excessive force will be denied.

## C. Plaintiff's First Amendment Claim

The Sixth Circuit has "clearly stated that private citizens have a First Amendment right to criticize public officials and to be free from retaliation for doing so." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). Plaintiff brings a First Amendment claim for retaliation against the Officers. The Officers, asserting qualified immunity, argue for summary judgment.

To prove retaliation, "a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). In the Sixth Circuit, the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002) (quoting *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987)).

Defendants neither expressly address nor offer any evidence to rebut Plaintiff's claim of retaliation. Plaintiff testifies that in response to his criticisms of the Officers' actions, and demands for their information, Officer Verbeke seized his

15

vehicle (which Plaintiff had to pay $150 to recover), and Officer Shortridge, in concert with Officer Elgert, ticketed him for no identification. Plaintiff's testimony is sufficient to state a prima facie case for retaliation because having one's vehicle seized, and receiving a ticket, for criticizing police are adverse actions that would likely chill a person of ordinary firmness from exercising this protected right. Defendants do not point to any specific facts that contradict Plaintiff's retaliation claim, beyond their general position that the ticket and impoundment were legally justified. A reasonable officer would have known that seizing a citizen's vehicle and ticketing him in response to his protestations against the officer's behavior, and demands for the officer's identification, would violate his First Amendment right to criticize police and be free from retaliation for doing so. Whether the Officers are entitled to qualified immunity thus depends on whether one believes Plaintiff's or the Officers' version of the facts. The record here creates a genuine issue of fact that a reasonable jury could resolve in favor of Plaintiff. For these reasons, Defendants' motion for summary judgment will be denied as to Plaintiff's claim for retaliation.

### D. Plaintiff's Supervisor Liability Claim

To establish supervisor liability, "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor v. Michigan Dept. of Corrections* 69 F.3d 76, 81 (6th Cir. 1995). Plaintiff testifies that, after the incident, he called Defendant Sergeant Jackson to explain

what happened, request a ride home and inquire about retrieving his car. Plaintiff states that Sgt. Jackson said the police could not transport him, that he did not know where Plaintiff's car was and that Plaintiff should call back. In addition, Plaintiff testifies that later that evening the phone operator at the precinct refused to put his call through to Sgt. Jackson, stating that Plaintiff had already spoken to him, and only after Plaintiff's brother called the precinct and asked to speak to Sgt. Jackson was Plaintiff allowed to talk to him and learn where his car was.

Viewed in the light most favorable to him, Plaintiff's testimony proves at most that Sgt. Jackson was less than helpful during their initial call and that the precinct operator was likewise uncooperative when he called back. No reasonable jury could find based on this evidence that Sgt. Jackson implicitly authorized, approved or knowingly acquiesced in any of the Officers' allegedly unconstitutional conduct. Defendants' motion for summary judgment as to Plaintiff's supervisor liability claim will therefore be granted.

### III. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's municipal liability, supervisor liability, and Fifth, Sixth and Fourteenth Amendment claims and **DENIED** with respect to Plaintiff's First and Fourth Amendment claims.

**SO ORDERED**.


Dated: November 14, 2016          s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was electronically submitted on November 14, 2016, using the CM/ECF system, which will send notification to all parties.

                                                                s/A. Chubb
                                                                 Case Manager